**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

DIRECTV, Inc., a California corporation,

Plaintiff/Judgment Creditor,

vs.

Eagle West Communications, Inc., d/b/a Eagle West Cable, a Nevada corporation; et al.,

Defendant/Judgment Debtor.

Francisco and Marla Delores Saldana,

Garnishee.

No. CV 09-00379-PHX-JAT

**REPORT AND RECOMMENDATION**

TO THE HONORABLE JAMES A. TEILBORG, UNITED STATES DISTRICT JUDGE:

On January 13, 2010, a consent judgment was entered against Defendants Paul D.H. LaBarre and Terri S. LaBarre, and others, in favor of Plaintiff, in the amount of $400,000.00. (Doc.99.) Subsequently, on June 7, 2010, then presiding Judge Mary H. Murguia referred garnishment proceedings to undersigned Magistrate Judge. (Doc. 122.) This matter arises upon Plaintiff/Judgment-Creditor DIRECTV's ("Plaintiff") Application for Writ of Garnishment against Garnishee Francisco and Marla Delores Saldana ("Garnishee"), filed on May 10, 2012. (Doc. 151.) Plaintiff seeks entry of Judgment against the Garnishee for nonexempt monies purportedly belonging to Defendants/Judgment Debtors Paul and Terri LaBarre ("Defendants"). Garnishee filed an Answer on May 15, 2012, indicating that Garnishee was indebted to Defendants on a 2001 promissory note for $50,000.00, and attached the note to their Answer. (Doc. 155.) On June 6, 2012, Plaintiff filed a Motion for

Judgment Against Garnishee. (Doc. 157.) Prior to a ruling on the Motion, Defendant Terri Labarre, appearing *pro se*, on June 8, 2012, filed a Motion for Hearing re: Writ of Garnishment. (Doc. 159.) Plaintiff filed an Objection, (Doc. 160), and Defendant Terri LaBarre filed a Reply. (Doc. 161.) On October 19, 2012, this Court granted Defendant Terri LaBarre's request for a hearing on the garnishment. (Doc. 166.) The hearing took place on December 6, 2012.

**BACKGROUND**

The Promissory Note attached to Garnishee's Answer establishes that, on April 24, 2001, Garnishee promised to pay Defendants Paul and Terri LaBarre, for value received, the principal sum of Fifty Thousand dollars ($50,000.00), payable in monthly installments of $537.30. (Doc. 155, at 5-6.) The promissory note was secured by a Deed of Trust or Realty Mortgage on real property, and was signed by all parties. (Id.) In her request for a hearing, Defendant Terri LaBarre claims that the monies being garnished are exempt monies because the "note [was] assigned to third party [in] 2008." (Doc. 159.) Attached to her request is a document titled Assignment of Promissory Note to a Minor. (Doc. 159, at 10.) The note provides that Defendant Paul Labarre, as the assignor, assigned the promissory note to Dante Jay LaBarre, a minor, with Defendant Terri LaBarre as the trustee. (Id.) The note is signed by Defendants and notarized on March 4, 2008. (Id.)

Defendant Terri LaBarre also attached to her request for a hearing letters dated March 5, 2008. The first, addressed to Garnishee, purports to notify Garnishee that the Promissory Note was being assigned to her youngest son to "allow for his Gym fees to be paid from the proceeds." (Doc. 159, at 8.) The second, addressed to First American Title, purports to enclose the Assignment of Promissory Note to a Minor (hereinafter "Assignment"), with a request that it be filed with the recorders office of Pinal County. (Id., at 9.)

Plaintiff objected to Defendant Terri LaBarre's request for a hearing on the basis that it was untimely filed by eight (8) days. (Doc. 160.) Plaintiff also objected on the basis that the purported assignment of the note to Defendants' minor son was a fraudulent assignment for the following three reasons: (1) the Assignment was without consideration (parents are

responsible for their children and an assignment to pay child-rearing costs is of questionable validity); (2) Defendant Terri LaBarre maintained possession and control of the promissory note payments by depositing them into two different bank accounts, a business account and Defendant Paul LaBarre's account, the payments were co-mingled with other deposits, and expenses other than the "gym fees" were paid out of the account; and (3) the purported Assignment was concealed because Garnishee was not in fact notified (in its Answer Garnishee did not indicate an indebtedness to anyone other than Defendants, and Garnishee's attorney had notified Plaintiff's that his clients were unaware of the Assignment until after their receipt of the Writ of Garnishment), and because the Assignment was never recorded (a search of the records of the Pinal County Recorder revealed that the Assignment was never recorded). (Id., at 5-7; Exhibits 4, 5.)

In response, Plaintiff submitted a copy of a letter purportedly authored by the notary public whose notary stamp and signature appeared on the Assignment. (Doc. 163, Exh. A.) In the letter, Daniel Pero confirms that he was a licensed notary at the time of the assignment, recognized his signature and notary stamp on the document, but could not provide copies of his notary journal log for that date because his book "is either lost, destroyed, [or] non-recoverable." (Doc. 163, at 4.)

The hearing on Defendant Terri LaBarre's objection to the garnishment commenced on December 6, 2012. (Doc. 180.) During the hearing, Defendants both made statements, under oath regarding the validity of the assignment of the promissory note to their minor son for the payment of his gym fees. While Defendant Paul LaBarre stated that he had sent the letter in 2008 to First American title directing that the Assignment be recorded, and that the assignment was in fact recorded, Plaintiff introduced into evidence an affidavit of Maureen Zachow indicating that a search of Pinal County Reorder records did not reveal a recording of the Assignment. (Plaintiff's Exhibit 1.) Plaintiff also introduced into evidence an affidavit of a custodian of the records of First American Title Insurance Company, indicating that the letter Defendant Paul LaBarre produced, that was purportedly mailed to First American in 2008 directing the company to record the Assignment, was not found in their

records. (Plaintiff's Exhibit 2.)

In response to a Motion to Compel Discovery Responses filed by Plaintiffs that sought an order directing Defendants to produce certain records relating to the assignment, (Doc. 171), Defendants produced the following documents: a copy of USA Youth Fitness Center bill, dated November 6, 2012, sent to Defendant Teri LaBarre indicating a monthly tuition for Dante' LaBarre of $345.00 for the months of September through November, and a $15.00/month team fee, (Doc. 175, at 21): a copy of a money order from Garnishee made out to Defendants Paul and Terri LaBarre, dated July 10, 2001, in the amount of $584.49 (Id., at 22): a letter dated August 13, 2001, written by Defendants Paul and Terri LaBarre addressed to Garnishee reminding Garnishee to send the payments by the 12th of the month (Id., at 23): various other correspondence written by Defendants to Garnishee relating to insurance and tax payments on the property secured by the promissory note, (Id., at 24-27). In their Response to Plaintiff's request for production of documents, Defendants also produced a copy of the USA Youth Fitness Center "Rules/Policies" relating to membership at the Center. (Doc. 177, at 9-10.)

During the garnishment hearing, Defendants referenced a ledger, in the record, created by Terri LaBarre detailing the gym fees, and payments made between January 2008, and August, 2012. (Doc. 181, at 18-25). Defendants' ledger indicates that a total of $19,147.43 was paid to the gym for the years 2008 through 2012, and that the total amount paid for the months January through July, 2012, was $2,829.00. (Id.) The gym charges appear to be primarily monthly tuition and team fees, although there are miscellaneous snack and special event fees included. (Id.)

Plaintiffs introduced into evidence bank records demonstrating that for the months January through June, 2010, Defendant Terri LaBarre had three different TCF National bank accounts in the name of "Terri Sue LaBarre Trustee," none of which reflected deposits of Garnishee's payment on the promissory note, or reflect payment of gym fees. (Plaintiff's Exhibit 4.) Plaintiff also submitted, in its Objection to Defendants' request for a hearing, copies of money orders obtained by Garnishee made payable to Paul and Terri LaBarre in

the amount of the promissory note payment that were deposited into a TCF Bank account in the name of Real Star Communications. (Doc. 160-1, at 14-18.) The payments were deposited in May and June 2010. (Id.) Plaintiff also submits copies of checks written on that account during this same time period by Defendant Paul LaBarre for expenses related to dental care and utilities. (Id., at 19-20.) Finally, Plaintiff submitted copies of money orders obtained by Garnishee made payable to Paul and Terri LaBarre in the amount of the promissory note payments that were deposited into a TCF Bank account in the name of Paul D.H. LaBarre between November, 2010 and January, 2012. (Id., at 24-41.)

During the hearing, Plaintiff called Garnishee Francisco Saldana as a witness, who, when shown the 2008 letter Defendants purportedly sent to the Saldanas regarding the Assignment, testified that he had not seen the letter before. Defendants then called Maria Saldana, the daughter of Garnishees, who testified that the first time she had seen the 2008 letter addressed to her parents was "a long time ago," and that she knew the letter had something to do with the assignment of the note. The Court finds that the resolution of the factual dispute over Garnishee's receipt of the 2008 letter is not necessary to this Court's determination in this garnishment action.

## ANALYSIS

Generally, a federal writ of garnishment is governed by the law of the state in which the district court sits. See Fed.R.Civ.P. 69(a)[1]; Hilao v. Estate of Marcos, 95 F.3d 848, 851 (9th Cir. 1996). Under Arizona law, "garnishment reaches only debts existing at the time of the service of the writ." Reeb v. Interchange Resources, Inc. of Phoenix, 478 P.2d 82, 84 (Ariz. 1970). "[I]t is well settled in Arizona that the rights of a garnishor-creditor to assets in the hands of a garnishee are no greater than rights of the defendant-debtor to those assets."

---

[1] Rule 69(a), Fed.R.Civ.P., provides in pertinent part:

> A money judgment is enforced by a writ of execution, unless the court directs otherwise. The procedure on execution – in proceedings supplementary to and in aid of judgment or execution – **must accord with the procedure of the state where the court is located,** ... .

(emphasis added).

Webster v. USLife Title Co., 598 P.2d 108, 110 (Ariz. Ct. App. 1979) (citing Mid-State Electric Supply Co. v. Arizona Title Insurance & Trust Co., 464 P.2d 604, 606-07 (Ariz. 1970)).

A. Fraudulent Transfer.

Plaintiff alleges that the Assignment was a fraudulent, voidable transfer. A garnishment proceeding is an appropriate forum for a creditor to prove a fraudulent conveyance under the Fraudulent Transfer Act - no separate action is required. Retzke v. Larson, 166 Ariz. 446, 448 (Ariz. App. 1990). Under the Fraudulent Transfer Act, a transfer is fraudulent if the debtor made the transfer under either of the following circumstances:

1. With actual intent to hinder, delay or defraud any creditor of the debtor.
2. Without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor either:

   (a) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.

   (b) Intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

A.R.S. §44-1004(A). A creditor has the remedy of avoidance of the transfer to the extent necessary to satisfy the creditor's claim. A.R.S. §44-1107(A)(1),(2). During the garnishment hearing, Plaintiff argued that the Assignment was created to place the payments on the promissory note beyond the reach of creditors: however, the Complaint filed by Plaintiffs, that resulted in the consent judgment in this matter, was filed after the Assignment was created. Plaintiff argues that, nonetheless, Defendants were aware that they would be pursued by creditors for debts they had incurred. This argument is simply not supported by any documents or testimony in the record, and thus, this Court finds that there is insufficient evidence to support a finding of fraudulent transfer.

///

///

B. Validity of the Assignment.

Plaintiff also argues that if the intent of the Defendants was to create a valid transfer under the Arizona Uniform Transfers to Minors Act ("UTMA") by the Assignment document, it was wholly inadequate. Pursuant to A.R.S. §14-7659, several requirements must be met in order to create a valid UTMA transfer, one of which is that the custodian, or "trustee" must not be the same as the transferor of the asset. Here, Terri LaBarre was a beneficiary of the promissory note, and thus, for the transfer to be valid, she would have to transfer her interest. She could not, therefore, serve as the custodian of the minor's assets. A.R.S. §14-7659. Furthermore, the custodian must keep all custodial property separate and distinct from all other property. A.R.S. §14-7662(D). The evidence submitted by Plaintiff demonstrates that the funds from Garnishee were deposited into a business account, and into Defendant Paul LaBarre's bank account, and that expenses other than gym fees were paid out of the latter account. The Court finds, given the facts presented, that no valid UTMA account was created.

The only evidence presented by Defendants to establish the creation of a valid Assignment of any legal force and effect is a ledger created by Defendants denoting payments made on behalf of their son Dante for fees related to his membership in the gym. Defendants do not submit any bank records that support the entries in this ledger, or that the payments from Garnishee were used solely for these fees, or that show that a proper trust account was created. Yet, Defendants ask the Court to find that Garnishee's monthly payments to Defendants should be exempt from garnishment. On this evidence, such a finding would mean that all a debtor would have to do to place payments on a note beyond the reach of creditors is claim that the monies are being "directed" toward the payment of a minor child's expenses, whether it be gym fees, piano or horseback riding lessons, dance lessons, or private tutoring.

///

///

///

The garnishment statute is not, however, blind to debtor hardship. The garnishment statute provides that certain monies are exempt from garnishment, and defines exempt monies as "monies or property that, pursuant to a state or federal law, is not subject to judicial process, including ...garnishment." A.R.S. §12-1570(2). Exempt monies include child support, spousal maintenance, earnings of a minor child or a variety of insurance payments. See, A.R.S. §33-1126(A). In addition, 75% of disposable earnings are also exempt from garnishment. A.R.S. §12-1598(5). Workers' Compensation benefits may also be exempt from garnishment. A.R.S. §23-1068(B). Thus, there are many statutorily created exemptions from garnishment, that ensure that no debtor is left without the ability to provide for the basic necessities. No exemption is claimed here, and Defendants cite no authority to establish that the purported Assignment here is valid or that it places Garnishee's payment on the promissory note immune from garnishment.

In accordance with the foregoing,

**IT IS HEREBY RECOMMENDED** that Defendants' Objection to the Writ of Garnishment is overruled, and that Plaintiff's Application for Judgment against the Garnishee (Doc. 157) be **GRANTED.** Plaintiff shall have seven (7) days from the Court's Order adopting this Report and Recommendation to submit to the Court a proposed judgment against Garnishee.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment. The parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. See 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(b) and 72. Thereafter, the parties have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to timely file objections to any

factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order of judgment entered pursuant to the Magistrate Judge's recommendation. See Fed.R.Civ.P. 72.

DATED this 17th day of December, 2012.

Michelle H. Burns
United States Magistrate Judge